IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| ERICA MAHAN, individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br>vs.<br><br>LABORATORY CORPORATION OF AMERICA A/K/A, D/B/A, "LCA COLLECTIONS,"<br><br>Defendant. | Case No.: 10-cv-00426-KD-M<br><br>CLASS ACTION |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS

COMES NOW Plaintiff and submits the following Memorandum of Law in opposition to the Motion to Dismiss filed by Defendant.

### INTRODUCTION

Plaintiff's claims arise from several violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), which occurred in connection with the defendant's collection practices. The defendant, Laboratory Corporation of America, ("LabCorp"), engaged in prohibited conduct, using a name other than its own, while attempting to collect a debt from Mrs. Mahon. These violations occurred while LabCorp was attempting to collect its own debt. The FDCPA usually does not apply to a creditor collecting its own debt. Under the statute, however, there are exceptions that apply to the situation here. It is undisputed that LabCorp, at the time in question, was collecting under the trade name or pseudonym "LCA COLLECTIONS." When a creditor engages in collection activity under any name other than it's true name it becomes subject to the requirements of the FDCPA. Whether the "lease

1

sophisticated debtor" could be deceived by LabCorp's conduct is one for a fact finder and cannot be subject to a 12(b) motion. Authority for the proposition that a creditor's collection activity can subject to FDCPA coverage is found in several places in the act as shown below.

## RELEVANT FACTUAL ALLEGATIONS

Plaintiff, Erica Mahan, was injured in an automobile accident on August, 28, 2008. During the treatment of her injuries she underwent laboratory testing, on July 14, 2009, performed by a company called Dianon Systems. According to its SEC filings, Laboratory Corporation of America acquired Dianon Systems in 2003. (FAC ¶ 8).

On or about September 10, 2009, LabCorp, using the pseudonym "LCA COLLECTIONS," initially contacted Plaintiff by the use of a collection letter demanding payment in the amount of $145.72. (FAC ¶ 9). A second letter was sent to the Plaintiff demanding payment in the amount of $145.72, on or about October 10, 2009, by LabCorp. (FAC ¶ 10). The letters, exhibits "A" and "B" to the FAC, were carefully crafted to give the false impression that the alleged debt had been referred to a third party for collection and to overshadow the fact that LabCorp is actually collecting its own debt. For example, in large orange print at the top of the letter appear the following words:

**LCA COLLECTIONS            PAST DUE**

Underneath that are the words, "A Division of Laboratory Corporation of America," in much smaller black print. At the bottom of the letter, the consumer, to which the dunning letter is directed, is instructed to, "MAKE CHECK OR MONEY ORDER PAYABLE TO: **LCA**." (FAC ¶¶ 11-14).

The collection letters received by the Plaintiff do not contain the statutorily required

language and do not comply with the requirements set forth under 15 U.S.C. § 1692g(a) or 1692e(11). (FAC ¶ 17). The September 10, 2009 collection letter was the initial contact with Plaintiff and Plaintiff received no other communication or written notice within five days that complied with 15 U.S.C. § 1692g. (FAC ¶ 18).

## ARGUMENT

**I.   LEGAL STANDARD**

The U.S. Supreme Court's most recent pronouncement of the motion to dismiss standard is found in *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009). The *Iqbal* court expounded upon the principles it set out in *Bell Atlantic Corp. v. Twombly,* 550 US 544 (2007) stating:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).

*Iqbal*, 129 S.Ct. at 1949.

The Court reiterated its principle, stated in *Twombly*, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1950.

The Eleventh Circuit Court of Appeals, in *Watts v. Florida International University,* 495 F.3d 1289 (August 17th 2007), held that the *Twombly* decision means that "A formulaic recitation of the elements of a cause of action will not do," citing *Twombly* at 1965 and that "[f]actual allegations must be enough to raise a right to relief above the speculative level." . Furthermore,

the Eleventh Circuit went on to say on page 1295 of the *Watts* opinion "the Supreme Court's most recent formulation of the pleadings specificity standard is that 'Stating such a claim requires a complaint with enough factual matter (taken as truth) to suggest' the required element." The standard is one of "plausible grounds to infer." "The Court has instructed us that the rule 'Does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element. It is sufficient if complaint succeeds in "identifying facts that are suggestive enough to render the [the element] plausible."

"Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all the inferences derived from those facts in the light most favorable to the plaintiff." *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir. 1994).

Finding the plaintiff's allegations sufficient under *Twombly,* and *Iqbal* in and denying a motion to dismiss in a FDCPA case, a Florida District court recently said, "'pursuant to *Twombly,* to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,  a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. *In Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009), the Supreme Court further stated that a court need not accept legal conclusions as true,

4

but only well-pleaded factual allegations are entitled to an assumption of truth.'" *Clarke v. Weltman, Wienberg & Reis, Co., L.P.A.,* 2010 U.S. Dist. LEXIS 71344, 2-3 (S.D. Fla. July 15, 2010)

Plaintiff has recently filed Doc. 12, her first amended complaint ("FAC"), and, as shown below, it meets all applicable pleading standards. She alleges violations of the FDCPA, and her allegations, premised on collection activity by LabCorp, state claims for relief under the Act. Each of the targeted practices are identified and described in the Complaint in detail, as well as the provisions of the FDCPA upon which the claims are based.

II.     **PLAINTIFF HAS STATED A CLAIM THAT LABCORP HAS VIOLATED THE FDCPA.**

"The Fair Debt Collection Practices Act prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins,* 514 U.S. 291, 292 (U.S. 1995). A debt collector who "fails to comply with any [FDCPA] provision . . . with respect to any person is liable to such person" for "actual damage[s]," costs, "a reasonable attorney's fee as determined by the court," and statutory "additional damages." § 1692k(a) *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1606 (U.S. 2010) "[T]he remedial nature of the statute, which requires us to interpret it liberally." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. Or. 2006) *accord Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) ("Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer."). "[T]he Fair Debt Collection Practices Act's strictures are intended to protect unsophisticated consumers, see, e.g., *Jeter v. Credit Bureau, Inc*., 754 F.2d 907, 910-913 (11 Cir. 1985)."

5

Creditors are usually not covered by the FDCPA. *See Young v. Citicorp Retail Services, Inc.*, 1997 WL 280508, at 4 (D. Conn. 1997) ([G]enerally, the FDCPA does not apply to creditors.) "A creditor is 'any person who offers or extends credit creating a debt or to whom a debt is owed.' 15 U.S.C. § 1692a(4)." *Brown v. Budget Rent-A-Car Sys.*, 119 F.3d 922 (11th Cir. 1997). The 11th Circuit Court says, "[i]n analyzing the application of the FDCPA to the case at hand we begin with the language of the statute itself." *Hawthorne v. Mac Adjustment*, 140 F.3d 1367 (11th Cir. 1998) The FDCPA defines a debt collector as in pertinent part as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. 15 U.S.C. § 1692a(6).

Plaintiff has alleged that LabCorp is collecting under the name of "LCA Collections" in the FAC. If these allegations are accepted as true a cause of action under the FDCPA has been stated. Here, LabCorp's conduct is not even disputed. See LabCorp's BR at pp. 8 and 9. Although it admits the disputed conduct LabCorp states, "[c]ertainly, even the least sophisticated consumer who took any care whatsoever to review the invoices would have recognized that LCA Collections is the in-house collections division of Laboratory Corporation of America, as explicitly stated in the notices." As shown below what the least sophisticated consumer would have or should have recognized is a question of fact that cannot be resolved on a motion to dismiss.

Additionally Plaintiff, in the FAC, alleges that LabCorp has violated 15 U.S.C. §1692j. This section of the FDCPA makes it "unlawful to design, compile, and furnish any form

6

knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j(a). This prohibition applies to, "[a]ny person." See 15 U.S.C. §1692j(b).

Each of these code sections and LabCorp's liability under them is more fully discussed below.

### A. Plaintiff Has Sufficiently Alleged LabCorp is a Debt Collector.

"There is one situation specifically recognized by the FDCPA when a creditor will be deemed a debt collector and therefore subject to the strictures of the Act. That situation exists when the creditor attempts to collect its own debts by using 'any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.' 15 U.S.C. § 1692a(6). The imposition of liability in this case recognizes the fact that when a creditor uses a name other than his own, the motivation to protect the good will in his own name is absent and the likelihood for abusive debt collections practices returns. Thus, a creditor may be found liable under section 1692(a)(6) if, in the course of collecting its own debts, it 'pretends to be someone else' or 'uses a pseudonym or alias.'" *Maguire v. Citicorp Retail Servs.*, 147 F.3d 232 at 235 (quoting *Villarreal v. Snow*, 1996 U.S. Dist. LEXIS 11930, 1996 WL 473386 at 3 (N.D.Ill.) Aug. 19, 1996). See also *Carlson v. Long Island Jewish Med. Ctr.*, 378 F. Supp. 2d 128, 131 (E.D.N.Y. 2005)

However, "'a creditor does not fall within the 'used a name other than its own' exception unless the creditor actually pretends to be someone else or uses a pseudonym or alias.' *Villarreal v. Snow*, 1996 U.S. Dist. LEXIS 11930, at *8, 95 C 2484, 1996 WL 473386, at *3 (N.D. Ill. Aug.

19, 1996)." *Larson v. Evanston Northwestern Healthcare Corp.*, 1999 U.S. Dist. LEXIS 11380, 8-9 (N.D. Ill. July 19, 1999) Here, LabCorp pretends to be a debt collector by using collection letters with large orange print at the top stating, "**LCA COLLECTIONS       PAST  DUE**." Additionally the letters instruct the consumer to make their payment, not to LabCorp, but to "LCA."[1]

By masquerading as a debt collector LabCorp has brought itself under the purview of the FDCPA. Section "1692a(6) prohibits a party []from pretending that it has hired a debt collection company [] to collect its debts when in fact it is collecting its own debts." *Roe v. Publishers Clearing House, Inc*., 1999 U.S. Dist. LEXIS 16249 (N.D. Ill. Sept. 30, 1999) "[A] creditor becomes subject to the FDCPA if the creditor 'in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.' 15 U.S.C. § 1692a(6)." *Maguire* at 235. Further, "[a] creditor uses a name other than its own when it uses a name that implies a third party is involved in collecting its debts, 'pretends to be someone else' or 'uses a pseudonym or alias.'" *Id* (citation omitted). "Although a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, it should use the 'name under which it usually transacts business, or a commonly-used acronym,' … or any name that it has used from the inception of the credit relation." *Id* (citation omitted). "Similarly, a creditor's in-house collection division … is not considered a debt collector 'so long as [it uses] the creditor's true business name when collecting.'" *Id,* (citation omitted) (alterations in original).

On page 9 of its brief LabCorp cites *Meads v. Citicorp Credit Services, Inc*., ("CCSI"), 686 F. Supp. 330, for the proposition that by placing the words, "A Division of Laboratory

---

[1] See Exhibits "A" and "B" to the FAC.

8

Corporation of America," in small print underneath the bold orange lettering, mentioned above, it "cannot be said to be using a name other than its own." The *Meads* court was ruling on CCSI's summary judgment motion and not a 12(b)(6) motion. "Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to the claims arising under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*" *Meads* at 334. The Meads sued CCSI which moved for Summary judgment on the FDCPA claims contending that it was not a "debt collector." Under the facts in *Meads* the court held "The creditor is not collecting the debt under an assumed name; rather, a separate and excludable entity is collecting the debt." *Meads* at 334. This is an exception to FDCPA coverage found at 15 U.S.C. § 1692a(6)(B).[2] Here, it undisputed that LabCorp, a creditor, is collecting under the assumed name "LCA Collections." LCA Collections is not "a separate and excludable entity [] collecting the debt" and, therefore, LabCorp cannot avail itself of this exception to FDCPA coverage.

LabCorp next cites to, but does not quote, 53 Fed. Reg. at 50102, beginning on the last paragraph of its brief on page 9, saying that, "The Official FTC Commentary is in accord." The applicable part of the Federal Register, beginning at 53 Fed. Reg. 50097, does not appear to give LabCorp much cover and states:

> 3. Application of definition to creditor using another name. Creditors are generally excluded from the definition of "debt collector" to the extent that they collect their own debts in their own name. **However, the term specifically applies to "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is" involved in the collection.**

---

[2] Section 1692a(6)(B) excludes from FDCPA coverage, "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts."

A creditor is a debt collector for purposes of this act if:

**-- He uses a name other than his own to collect his debts, including a fictitious name.**

-- His salaried attorney employees who collect debts use stationery that indicates that attorneys are employed by someone other than the creditor or are independent or separate from the creditor (e.g., ABC Corp. sends collection letters on stationery of "John Jones, Attorney-at-Law").

-- He regularly collects debts for another creditor; however, he is a debt collector only for purposes of collecting these debts, not when he collects his own debt in his own name.

-- The creditor's collection division or related corporate collector is not clearly designated as being affiliated with the creditor; **however, the creditor is not a debt collector if the creditor's correspondence is clearly labeled as being from the "collection unit of the (creditor's name)," since the creditor is not using a "name other than his own" in that instance.**

Relation to other sections. A creditor who is covered by the FDCPA because he uses a "name other than his own" also may violate section 807(14), which prohibits using a false business name. When he falsely uses an attorney's name, he violates section 807(3).

(Emphasis added.)

As shown above, the FTC expects a creditor's correspondence to be "clearly labeled." It is difficult to understand how using LCA COLLECTIONS in large orange print, while printing its real name in much smaller black print and then instructing the consumer to pay "LCA COLLECTIONS" constitutes clear labeling or complies with the FTC's guidance. LabCorp claims however, on page 10 of its brief, that it "has done exactly what the FTC commentary contemplates," and that it, "has clearly communicated that it is collecting its own debts and that the consumer is not dealing with a third-party debt collector." Then, LabCorp, citing *Aubert v. Am. Gen. Fin.,* 137 F.3d 976, 978 (7th Cir. 1998) and S. Rpt. No. 95-382, makes the puzzling statement that, "Congress has determined that this use of the "LCA" acronym sufficiently

constrains LabCorp's collection activities such that it cannot be deemed a 'debt collector' for the purposes of the FDCPA."

The real issue, under the facts as alleged, is: Are LabCorp's collection letters deceptive or do they have the tendency or capacity to deceive? See, *Maguire v. Citicorp Retail Servs*., 147 F.3d 232, 236 (2d Cir. 1998). "The question we must answer is whether, under the least sophisticated consumer standard, a consumer would be deceived into believing that the letter at issue was not from Citicorp [here LabCorp], but was from an unrelated third party, Debtor Assistance, even though Citicorp and Debtor Assistance are in fact related." See also, *Sparks v. Phillips & Cohen Assocs., Ltd.,* 641 F. Supp. 2d 1234, 1248 (S.D. Ala. 2008) "For purposes of a § 1692e claim, '[t]he question is not whether [plaintiff] was deceived, but whether the ''least sophisticated consumer'' would have been deceived.' Jeter, 760 F.2d at 1177 n.11."

Of course, the least sophisticated consumer standard applies this circuit as well. See *Jeter* at 1172, "[r]elevant administrative adjudications and case law under the Federal Trade Commission Act ("FTC Act"), 15 U.S.C.A. § 41, et seq., upon which we rely by analogy, and persuasive authority under the FDCPA lead us to the conclusion that the district court applied an improper standard. Section 5 of the FTC Act declares unlawful all 'unfair or deceptive acts or practices in commerce.' 15 U.S.C.A. § 45(a)(1). An act or practice is deceptive or unfair under § 5 if it has the tendency or capacity to deceive."

The *Jeter* court went on to say, "'Because we believe that Congress intended the standard under the FDCPA to be the same as that enunciated in the relevant FTC cases, see supra note 5, and because we believe that the FDCPA's purpose of protecting [consumers] . . . is best served by a definition of 'deceive' that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters and telephone calls, we adopt the *Exposition*

*Press* standard of "least sophisticated consumer" as previously followed by the federal courts in *Baker, supra* and *Bingham, supra*.'" *Jeter* at 1175.

In *Exposition Press* the FTC issued a cease and desist order to Exposition Press, Inc., regarding certain of its advertising practices. Exposition Press challenged the FTC's order by filing suit. In upholding the FTC the *Exposition Press* court said:

> Petitioners attack the order on a number of grounds; that the complaint before the Federal Trade Commission did not state a cause of action, that the Commission's findings of deceptiveness are erroneous, that on principles of res judicata the Commission's proceedings were barred by an earlier consent order, and that in any event the Commission's order is too broad and should be modified. We find these contentions to be without merit.
>
> Exposition Press, Inc. is a 'subsidy' or 'vanity' publisher. Its business differs from that of most publishing houses in that normally most or all of the expense of publishing its books is paid in advance by their authors. Less than 10% of its authors recoup their investments and derive actual profit from their writing. The Commission's complaint attacked Exposition's use of the following advertisement, which was inserted in a variety of newspapers and magazines:
>
>> 'Free to Writers seeking a book publisher
>> Two fact-filled, illustrated brochures tell how to publish your book, get 40% royalties, national advertising, publicity and promotion. Free Editorial appraisal. Write Dept. STM-3. Exposition Press / 386 4th Ave., N.Y. 16'
>
> The hearing examiner found that the application of the term 'royalty' to any payments from sales receipts made to an author before his entire investment had been returned was deceptive per se.
>
> The Commission vacated the examiner's findings and made more limited findings to the effect that the advertisement as worded tended to 'mislead and deceive a substantial portion of the purchasing public with respect to the payment they will receive for the publication of their books. * * *' It entered an order that petitioners cease and desist from:
>
>> Representing through the use of the term 'royalties' or in any other manner that they will make payments to an author based on sales of the author's book unless a disclosure is made in immediate conjunction therewith that such payments do not constitute a net return to the author but that the cost of printing, promoting, selling

> and distributing the book must be paid in whole or in substantial part by the author.
>
> …
>
> In evaluating the tendency of language to deceive, the Commission should look not to the most sophisticated readers but rather to the least. *F.T.C. v. Standard Educ. Soc'y,* 1937, 302 U.S; 112, 116*, Educ. Soc'y*, 1937, 302 U.S. 112, 116, *Club, Inc. v. F.T.C.,* 2 Cir., 202 F.2d 486, certiorari dismissed, 1953, 346 U.S. 883, 74 S.Ct. 144, 98 L.Ed. 388. For this reason we must reject the argument that any reasonable author should have known enough not to expect a free-and-clear 40% royalty; the fact that a person has produced a manuscript does not necessarily mean that he has any knowledge of publishers' prevailing rates.

*Exposition Press, Inc*. v. FTC, 295 F.2d 869, 872 (2d Cir. 1961)

A jury, applying the *Exposition Press* standard, could find that LabCorp's collection letters were deceptive and/or that they have the tendency or capacity to deceive.

A medical collection case, *Carlson* supra, is instructive. In *Carlson*, it was alleged that the hospitals were debt collectors because they used an incorporated subdivision to, "conduct 'unconscionable collection practices' with assistance from collection agencies including an entity referred to as the 'Regional Claims Recovery Service' ("RCRS"). Plaintiffs allege that RCRS is an 'unincorporated subdivision of the North Shore Health System.' According to Plaintiffs, the Hospitals, though, *inter alia,* RCRS, use 'abusive, harassing tactics in collective outstanding bills."' *Carlson* at 131. The *Carlson* court went on to deny the hospitals' motions to dismiss stating "[a]ccordingly, it must be held, at this point in the proceedings, that the complaint sets forth facts sufficient to allege the debt collector status of the Hospitals so as to bring their collection activities within the reach of the FDCPA. *Accord Ekinici v. GNOC, Corp.,* 2002 U.S. Dist. LEXIS 25306, 2002 WL 31956011 at 3-4 (E.D.N.Y. 2002) (denying motion to dismiss

FDCPA claim against creditor where "general obfuscation" in collection letter could have left least sophisticated consumer with impression that collection effort was made by a third party)."

Applying an "unsophisticated consumer" standard in a case with facts similar to the case at bar the court in *Sheldon v. Unum Life Ins. Co. of Am.*, 2006 U.S. Dist. LEXIS 28120 (D. Neb. May 9, 2006) denied a motion to dismiss saying, "[i]t is possible that from the perspective of an unsophisticated consumer, the notices Sheldon allegedly received from Unum appeared to direct payment to a third party."

In another medical collection case, where it was alleged that a hospital was collecting under a name other than its own, a Florida district court denied a motion to dismiss saying, "The plaintiffs should be entitled to discovery to determine the accuracy of Baptist's contention that it is not a debt collector." *Sabeta v. Baptist Hosp. of Miami, Inc.,* 410 F. Supp. 2d 1224, 1242 (S.D. Fla. 2005).

The question of whether a dunning letter, using or containing a name other than a creditor's actual name, is "clearly labeled" or deceptive was one for a factfinder. See *Goslee v. Franklin Mint Corp.*, 1998 U.S. Dist. LEXIS 4237 (E.D. Pa. 1998), "[t]here is a triable issue of material fact - whether or not defendant Franklin Mint acted as a "debt collector" under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o. Resolution will require a factfinder to determine if debt collection notices sent to plaintiff Helen Goslee sufficiently disclose that their source was the defendant creditor."

Likewise applying the "least-sophisticated consumer" standard the question of whether a collection letter could reasonably be perceived as a threat to take legal action, "is best left to [a] jury['s] decision." *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185 (11th Cir. 2010). The *LeBlanc* court went on to say, "In *Jeter* we explained that where the parties reasonably disagree

14

on the proper inferences that can be drawn from the debt collector's letter, resolution is for the trier of fact - not for the court on summary judgment." *LeBlanc* at 1197.

The least sophisticated debtor's understanding of a message left by a debt collector is a jury question. "[W]hether the least sophisticated consumer would have understood that Gulf Coast's messages were from a debt collector in relation to debt collection activities is a disputed fact best submitted to a jury, and, therefore, summary judgment for either party on the FDCPA claims is inappropriate." *Beeders v. Gulf Coast Collection Bureau, Inc.,* 2010 U.S. Dist. LEXIS 66984 (M.D. Fla. July 6, 2010)

"[T]he issue of whether adequate validation notice was given must be left for a later stage of the case, after further factual development." *Gaalswyk-Knetzke v. Receivable Mgmt. Servs. Corp.*, 2008 U.S. Dist. LEXIS 44152 (M.D. Fla. May 27, 2008)

"As with the claim under subsection (5), and in contrast with the § 1692g claim, this claim should also be presented to the trier of fact. Id. at 1177-78 ("In any event, we are confident that whether the 'least sophisticated consumer' would construe [debt collector's] letter as deceptive is a question for the jury."). *Rivera v. Amalgamated Debt Collection Servs.*, 462 F. Supp. 2d 1223, 1231 (S.D. Fla. 2006)

Finally, a Southern District of Florida court found that there was a question of fact as to "whether the dunning letter used false and deceptive means in connection with the collection of a debt." *Tyrell v. Robert Kaye & Assocs., P.A.*, 2004 U.S. Dist. LEXIS 16263 (S.D. Fla. Aug. 9, 2004)

One might ask the question, "Why would LabCorp use collection letters with 'LCA COLLECTIONS' at the top instead of its real name?" The only logical answer is that LabCorp intends to give the false impression that the debt had been referred to a third party for collection.

The facts here can be summarized as follows:

1. Plaintiff had lab tests done by Dianon Systems during her treatment for injuries she sustained in an automobile accident.

2. She received dunning letters from LabCorp that stated in large orange print that they were from LCA Collections.

3. Underneath the large orange print, in much smaller black print, it was stated that LCA Collections was a division of LabCorp.

4. At the bottom of the form she was instructed to make payment, not to Dianon Systems or LabCorp but to "LCA."

As in *Sheldon*, here, from the perspective of an "unsophisticated consumer," LabCorp's collection letters appear to direct payment to a third party, "LCA."

### B. Plaintiff Has Stated a Claim that LabCorp Violated 15 U.S.C. § 1692j.

"One provision of the FDCPA applies to individuals who are not debt collectors, rendering it unlawful 'to design, compile and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes to such creditor, when in fact such person is not so participating.'" 15 U.S.C. § 1692j. *Nichols v. Wash. Mut. Bank,* 2007 U.S. Dist. LEXIS 85936 (E.D.N.Y. Nov. 21, 2007)

Plaintiff alleges, in paragraph 20 G. of the FAC, that LabCorp's conduct violates 15 U.S.C. § 1692j. This code section makes it unlawful to, "design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so

participating," and applies FDCPA coverage to "[a]ny person who violates this section. 15 U.S.C. § 1692j(a) and (b). See also, *Roe v. Publishers Clearing House, Inc.,* 1999 U.S. Dist. LEXIS 16249 (N.D. Ill. Sept. 30, 1999) (A party who violates § 1692j(a) is "liable to the same extent and in the same manner as a debt collector.")

In the FAC, at paragraphs 11-14, it is plainly stated that exhibits "A" and "B" to the FAC, were carefully crafted to give the false impression that the alleged debt had been referred to a third party for collection and to overshadow the fact that LabCorp is actually collecting its own debt. Furthermore at paragraph 21G., it is stated, that LabCorp violated the FDCPA by, "designing, compiling, and using a form knowing that such form would create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating in violation of 15 U.S.C. § 1692j." These allegations state a cause of action under § 1692j. See, *Daley v. Provena Hosps.*, 88 F. Supp. 2d 881, 888 (N.D. Ill. 2000) (In plaintiffs' consolidated complaint, they state: "Provena Health designed, compiled, and furnished the [collection letter] … knowing that it was not authorized to do business as Sacor Systems Collection Agency and that it was not a licensed collection agency and so could not directly or indirectly attempt to collect any of the debts allegedly owed to Provena Hospitals.)

Clearly Plaintiff has stated a cause action for a violation of 15 U.S.C. § 1692j.

## CONCLUSION

For the reasons stated herein the Defendant's Motion to Dismiss should be denied.

Respectfully submitted this November 23, 2010

/s/ Earl P. Underwood, Jr.

17

                                            Earl P. Underwood, Jr.
                                            Attorney for the Plaintiff
                                            Underwood & Riemer, PC
                                            21 South Section Street
                                            Fairhope, AL 36532
                                            Telephone 251-990-5558
                                            Facsimile 251-990-0626
                                            epunderwood@gmail.com

### CERTIFICATE OF SERVICE

       I hereby certify that on November 23, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ashley E. Swink
Phelps Dunbar LLP
Post Office Box 417
Gulf Shores, AL 36547

                                            /s/ Earl P. Underwood, Jr.
                                            Earl P. Underwood, Jr.