```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION


ERICA MAHAN,                         :
                                     :
     Plaintiff,                      :
                                     :
vs.                                  :   CIVIL ACTION 10-0426-KD-M
                                     :
LABORATORY CORPORATION OF            :
AMERICA A/K/A. D/B/A                 :
LCA COLLECTIONS,                     :
                                     :
     Defendant.                      :
```

REPORT AND RECOMMENDATION

     The Motion to Dismiss the Amended Complaint (Doc. 17) filed by Defendant Laboratory Corporation of America a/k/a d/b/a LCA Collections ("Defendant") has been referred for report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2.  Federal question jurisdiction and diversity jurisdiction have been invoked in this Court under 28 U.S.C. §§ 1331, 1332.  After consideration, it is **RECOMMENDED** that Plaintiffs' Motion to Dismiss the Amended Complaint (Doc. 17) be **DENIED**.

     The facts are, briefly, as follows.  On July 14, 2009, Dianon Systems performed laboratory testing on Plaintiff Erica Mahan ("Plaintiff") for injuries she sustained from an

automobile accident (Doc. 12, ¶ 8).[1]  LCA Collections sent two letters to Plaintiff in September 2009 and October 2009 (Doc. 12, ¶¶ 9-11 and Ex. A-B).  Plaintiff filed her Complaint on August 10, 2011, and claimed that Defendant violated 15 U.S.C. §1692g and 15 U.S.C. § 1692e of the Fair Debt Collection Practices Act ("FDCPA"), and sought declaratory judgment and class action certification (Doc. 2).  Plaintiff filed an Amended Complaint on September 29, 2010 which added a claim against the Defendant for violation of 15 U.S.C. § 1692j, included the collection letters as exhibits, and explicitly stated that the collection letters were "carefully crafted to give the false impression that the alleged debt had been referred to a third party for collection" in violation of the FDCPA (Doc. 12, ¶ 11). In support of her claims, Plaintiff's Amended Complaint points to four ways that Plaintiff regarded the letters to be misleading: (1) the type size of the words "LCA COLLECTIONS" is significantly larger than the words "A Division of Laboratory Corporation of America"; (2) the positioning of the name "LCA COLLECTIONS" is above the smaller printed words; (3) the color ink of "LCA COLLECTIONS" and "PAST DUE" is orange, while the words "A Division of Laboratory Corporation of America" is in

---

[1] Laboratory Corporation of American acquired Dianon Systems in 2003, as known and noted by Plaintiff (Doc. 12, n. 1).

black ink like the rest of the letter, and (4) the letter directs the recipient to make a check payable to LCA (Doc. 12, ¶¶ 12-14).

Defendant filed a Motion to Dismiss the Amended Complaint (Doc. 17).  In response, Plaintiff filed an Opposition to Defendant's Second Motion to Dismiss (Doc. 22), and subsequently Defendant filed its Reply (Doc. 25).

The Court notes, initially, that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  The U.S. Supreme Court explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).[2]  While factual allegations do not have to be

---

[2]*Conley* also stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which (Continued)

detailed, they must contain more than "labels and conclusions;" "a formulaic recitation of the elements of a cause will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). "Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitle[ment] to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombley*, 550 U.S. 557) (quoting *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1950 (2009) (citing *Twombley*, 550 U.S. at 556). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of conduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

---

would entitle him to relief." *Conley*, 355 U.S. at 45-46. The U.S. Supreme Court has done away with this standard in *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 557-563 (2007). The Court, nevertheless, finds *Conley*'s statement regarding the purpose of Rule 8(a)(2) to be useful here in deciphering the analysis necessary for evaluating Plaintiff's claims.

is entitled to relief.'"  *Iqbal*, — U.S. —, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  As noted by the Supreme Court, Plaintiffs must "nudge[] their claims across the line from conceivable to plausible[; otherwise,] their complaint must be dismissed."  *Twombley*, 550 U.S. at 570.  It is noted, however, that a complaint may be dismissed, under Federal Rule of Civil Procedure 12(b)(6), "on the basis of a dispositive issue of law."  *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)), *cert. denied*, 502 U.S. 810 (1991).

To prove an FDCPA claim, a plaintiff must show that (1) a debt collector, (2) in pursuing the collection of a consumer debt, (3) engaged in conduct prohibited by the statute. 15 U.S.C. §§ 1692-1692(o); *Brown v. Budget Rent-A-Car System, Inc.*, 119 F.3d 922, 924 (11th Cir. 1997).  Defendant primarily challenges Plaintiff's claim by asserting that it is not a debt collector, but rather a creditor collecting its own debts (Docs. 17, 25).

The court notes that the FDCPA is a strict liability statute. 15 U.S.C. § 1692a; *Ferguson v. Credit Management Control, Inc.*, 140 F. Supp.2d 1293, 1297 (M.D. Fla. 2001).  In other words, a single violation of any provision of the FDCPA is sufficient to trigger liability.  15 U.S.C. § 1692a; *Mammen v.*

*Bronson & Migliaccio, LLP*, 715 F. Supp.2d 2010, 1213 (M.D. Fla. 2009).

The Eleventh Circuit, along with several other circuits,[3] has adopted the "least-sophisticated consumer" standard in analyzing claims brought under the FDCPA. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985). A creditor is subject to the FDCPA's provisions if the creditor, "in the process of collecting his own debts, uses any name other than his own which would ***indicate*** that a third person is collecting or attempting to collect such debt." 15 U.S.C. §1692a(6) (emphasis added).

"Under the 'false name exception' a creditor becomes subject to the FDCPA if, 'in the process of collecting his own debts, [the creditor] uses any name other than his own which could indicate that a third person is collecting or attempting to collect such debts.'" *Williams v. Citibank, N.A.*, 565 F.Supp.2d 523, 529 (S.D.N.Y.2008) (quoting *Mazzei v. Money Store*, 349 F.Supp.2d 651, 658-60 (S.D.N.Y. 2004)). "The false name exception is triggered if the least sophisticated consumer

---

[3] The Second, Third, Fourth, Sixth and Ninth Circuits also apply the "least-sophisticated consumer" standard. *Russell v. Equifax, A.R.S.*, 74 F.3d 30 (2d Cir.1996); *Brown v. Card. Serv. Ctr.*, 464 F.3d 450 (3d Cir.2006); *U.S. v. Nat'l Fin. Servs.*, 98 F.3d 131 (4th Cir.1996); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir.2006).

would have the false impression that a third party was collecting the debt." *Reese v. JPMorgan Chase & Co.*, 686 F.Supp.2d 1291, 1308 (S.D. Fla 2009)(quotation and citation omitted). The "least sophisticated consumer" standard looks at whether a consumer would have been deceived or misled by the conduct at issue. *Jeter*, 760 F.2d 1168, 1175 (11th Cir. 1985). "The purpose of the least-sophisticated-consumer standard, here as in other areas of consumer law, is to ensure that the [FDCPA] protects the gullible as well as the shrewd." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir.2008). The Court applies this objective standard with the knowledge of the FDCPA's dual purpose: to protect consumers against deceptive debt collection practices and to protect debt collectors from unreasonable constructions of their communications. *Id.* "The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)(quotations omitted). "However the test has an objective component in that '[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness . . . .'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (citations omitted).

7

It appears the "majority of courts have held that determining the effectiveness of a validation notice is a question of law." *In re Hathcock,* 437 B.R. 696, 702 Bkrtcy (M.D. Fla. 2010); *but see Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999) (holding that "whether a given message is confusing [for the purposes of FDCPA] is ... a question of fact, not of law or logic.").

Yet ultimately, in *LeBlanc*, the Eleventh Circuit court held that determining whether a collection letter "could reasonably be perceived as a 'threat to take legal action' under the 'least-sophisticated consumer standard' ... is best left to jury decision." *Id*. at 1195.[4]

---

[4] The *LeBlanc* court cited to the *Clomon* action for examples of how the "least-sophisticated consumer" standard has been applied by other courts to protect consumers. "The types or categories of collections notices recognized as violations of the FDCPA in other actions include generally: 1) notices that contain language that "overshadows" or "contradicts" other language that informs consumers of their rights; 2) n**otices that mislead by employing formats or typefaces** which tend to obscure important information that appears in the notice; and 3) notices that deceive by being open to more than one reasonable interpretation**,** at least one of which is inaccurate." *Id*. at 1195 n. 18 citing to *Clomon*, 988 F.2d at 1319 (internal citations omitted)(emphasis added). *See also United States v. Nat'l Fin. Serv., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996) (upholding the lower court's decision with no contest from the parties, that where the language for payment was in a "bold and commanding type" with the valid notice language printed on the reverse side in less visible ink could confuse the consumer and violate the FDCPA).

The court in *In re Hathcock*, found it appropriate that the court itself make the determination on the motion to dismiss whether the unsophisticated consumer would be deceived because no jury demand had been made, and the court itself would be the finder of fact at the bench trial. 437 B.R. at 702.

Defendant specifically argues in its Motion to Dismiss (Doc. 17, pp. 9, 12) and Reply (Doc. 25, p. 4) that LCA Collections and Labcorp's relationship is analogous to the defendant and creditor in *Meads v. Citicorp Credit Serv., Inc.*, 686 F. Supp. 330, 333-34 (S.D. Ga. 1988), since LCA Collections is not independent from Labcorp. In *Meads*, the court held that the defendant was not a debt collector since it was "related by corporate control" to the company that originally extended the credit and since its principal function was the solicitation and marketing of credit accounts, not collections. 686 F.Supp. at 334.

However, there are important differences between the action at hand and the factors before the *Meads* court. In *Meads*, the court evaluated a motion for summary judgment, rather than a motion to dismiss. *Id.* at 331. Second, the defendant in *Meads* differs from that of LCA Collections in that the *Meads* defendant's "principal function [wa]s solicitation and marketing of credit accounts, not collections" and it was a "separate and excludable entity" collecting the debt, not a direct creditor

9

collecting under a different name. *Id.* at 334. Third, the court in *Meads* found that the language "A Division of Citicorp's Credit Services" was a prominent graphic. *Id.* at 332. This Court is unable to determine whether the graphic size on the collection letters in this action is larger or smaller than the graphic size of the *Meads* collection letters to determine whether the graphic and/or words "A Division of Laboratory Corporation of America" is "prominent" or not, but does note that there is a prominent distinction in type size and color.

Defendant also argues that because LCA Collections is the in-house collections unit for Labcorp, there is no violation of the FDCPA, and cites to Federal Trade Commission Statements of General Policy or Interpretations Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-02 (Dec. 13, 1988) ("Official FTC Commentary") for support (Doc. 17, pp. 6-7). The commentary states:

> The creditor's collection division or related corporate collector is not clearly designated as being affiliated with the creditor; however, the creditor is not a debt collector if the creditor's correspondence is ***clearly*** labeled as being from the "collection unit of the (creditor's name)," since the creditor is not using a "name other than his own" in that instance.

Official FTC Commentary, 53 Fed. Reg. 50097-02, at 50102 (emphasis added). Another pertinent part of the commentary continues, as follows:

>     2. Creditor misrepresentation of identity. A creditor
>     may not use any name that would falsely imply that a
>     third party is involved in the collection. The in-
>     house collection unit of "ABC Corp." may use the name
>     "ABC Collection Division," but not the name "XYZ
>     Collection Agency" or some other unrelated name.
>     A creditor violates this section if he uses the name
>     of a collection bureau as a conduit for a collection
>     process that the creditor controls in collecting his
>     own accounts. Similarly, a creditor may not use a
>     fictitious name or letterhead, or a "post office box
>     address" name that implies someone else is collecting
>     his debts.

Official FTC Commentary, 53 Fed. Reg. 50097-02, at 50107.

However, neither of these sections address whether an acronym, and what type of acronym, will be sufficient to signify that the lettered-name is a directly connected entity to a specific creditor.  Additionally, the commentary notes that the letter must be "clearly" labeled, which is a subject at issue in this action, and a determination of fact.

The Southern District of Florida-Miami Division has found that a letter from LCA to a consumer, in *Obando v. Laboratory Corporation of America*, Case 10-cv-20253-FAM, sufficed to be from a creditor using a division of its own in-house collections.  However, this Court finds the Plaintiff's arguments in this action persuasive since the size, color and prominence of the words "LCA COLLECTIONS" perhaps overshadow the signifying identifier "A Division of Laboratory Corporation of America" and could be found by a jury to be misleading.  The size, color and prominence of the words "LCA COLLECTIONS" was

11

not considered by the Florida District Court in its Order. Additionally, this Court notes that the Complaint filed by the Plaintiff in the *Obando* action differs from the Amended Complaint filed by the Plaintiff in this action.  In *Obando*, the Plaintiff claimed he did not owe the debt cited in the collection letters.  Case 10-cv-20253-FAM (Doc. 1).  In this action, the crux of Plaintiff's claim is that she was misled to believe that she was sent collection letters from a debt collector, not the creditor, given the layout of the letter itself.

Defendant also argues that the acronym LCA is easily associated with Laboratory Corporation of America (Doc. 17, pp. 10-12), and cites to a Seventh Circuit action, *Aubert v. American General Finance, Inc.*, 137 F.3d 976 (7th Cir. 1998) in support, namely, for the idea that "Congress has determined that this use of the "LCA" acronym sufficiently constrains LabCorp's collection practices such that it cannot be deemed a 'debt collector' for the purposes of the FDCPA." (Doc. 17, p. 10).

However, the *Aubert* action did not discuss whether using an acronym on a collection letter instead of a creditor's full name was sufficient so that the least sophisticated consumer would know the letter came from a unit of the creditor. *Id.* at 979-980.  Rather, the *Aubert* court discussed the relationship

between the different defendants upon review of the district court's decision on a summary judgment motion. *Id*.

Defendant posits that the website billing address, language in the letter indicating Labcorp's refusal of service, and the telephone numbers on the letters linking the dialer to Labcorp taken together make evident to the least sophisticated consumer that LCA Collections was indeed a unit of the creditor, Laboratory Corporation of America (Doc. 17, pp. 10-12). In support of this argument, Defendant cites to *Button v. GTE Service Corp*, 1996 WL 943904,*1-2 (W.D, Mich. 1996). In *Button*, the court dismissed the complaint when the collecting party used stationary letterhead, a return address on envelopes, a related address where payment was to be returned, and text in the letter to demonstrate that the collecting entity was connected to the creditor, and not a third-party. *Id.* at *1.

Significantly, however, the plaintiff in the *Button* action did not allege that she was misled,[5] but rather argued that the least sophisticated consumer could not be expected to remember

---

[5] While Plaintiff did not state verbatim in her Complaint that she was "misled," she does allege that she considers LCA Collections to be a fictitious entity, and that the letters she received were "crafted to give a false impressions" *i.e.*, to be misleading (Doc. 12, ¶¶ 2, 7, 11). If Plaintiff does not mean that these letters were misleading to her, then who is she referring to? The Court reads the Complaint to allege that the letters attached to the Amended Complaint left a false impression on the Plaintiff.

13

the contents of past communications. *Id*. at *2. In this matter, there are no envelopes attached to the pleadings, the stationary "letterhead" itself is at issue, and the return address is to "LCA" at a Post Office box rather than to a physical address (Doc. 12, Ex. A and B).[6]

Defendant's remaining arguments hinge upon the first argument, namely, that since Defendant is not a debt collector or a misleading creditor, there is no violation of § 1692j[7] and no cause of action to obtain class action certification (Doc. 17)

---

[6] While Plaintiff fails to make this point, the text of the letter raises questions as well in that that the letter states: "Please contact us today … so that further collection activity will not be necessary." This language can be read two ways: (1) there are current collection activities, and possibly other activities exclusive of the letter, being pursued against the Plaintiff, or (2) collection activities will ensue and escalate if the charges are not paid.

[7] Defendant specifically argues that a creditor must furnish information to an outside third-party to be in violation of the FDCPA under § 1692j, and alleges that such did not occur in this instance. Defendant cites to *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725 (7th Cir. 2004) to support the idea that there must be a creditor furnishing information to a third-party, or secondly, be involved in a process called flat-rating to trigger a violation of §1692j (Doc. 17, pp. 13-14, 16). However, the crux of the *Gutierrez* action is that the creditor used a different name from the inception of its relationship with the consumer, and used the same name in its provision of services, billing, and collections. *Id*. at 740. Rather, the *Gutierrez* action highlights the fact that even one change in a word and/or name can render the name of an entity to be that of another i.e. AT&T Broadband versus AT&T Broadband, LLC, as discussed in *Gutierrez*.

However, if a jury finds that Defendant is a creditor who sent out misleading collection letters, then the § 1692j claim and class action certification could be viable.  As pointed out in Plaintiff's Response (Doc. 22), the words "LCA COLLECTIONS" and "PAST DUE" are in large, bold orange lettering at the top of the letter, and below in small black lettering, smaller than the rest of the letter's text, are the words "A Division of Laboratory Corporation of America".  The letter directs that any check should be made out to "LCA" and sent to a Post Office Box address.

In this action, a jury demand has been made and the Court finds it appropriate to leave to the jury the question whether the collection letters could reasonably be perceived as coming from a third-party entity under the least-sophisticated consumer standard. *See Jeter*, 760 F.2d at 1195.  Since Defendant's arguments for dismissal of Plaintiff's allegation of the § 1692j violation and class certification derive from Defendant's argument that it is not a debt collector or misleading creditor, its motion to dismiss as to those claims should also be denied.

In conclusion and for the reasons set out above, it is **RECOMMENDED** that Defendant's Motion to Dismiss (Doc. 17) be **DENIED**.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.    **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within fourteen days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objection party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

       A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **Transcript (applicable where proceedings tape recorded).**  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that

16

transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 1st day of February, 2011.

s/BERT. W. MILLING, JR.<br>UNITED STATES MAGISTRATE JUDGE